UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JULIE A. PRINCE, an individual, | |
| Plaintiff, | Case No. 2:09-CV-01095-KJD-PAL |
| v. | **ORDER** |
| U.S. BANCORP, as Trustee for Structured Asset Securities Corporation Mortgage Loan Trust 2006-BCI, | |
| Defendant. | |

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint (#16). Plaintiff has filed a Response in Opposition (#22), to which Defendant filed a Reply (#26). Defendant has also filed a Request for Judicial Notice with the Court (#17). Plaintiff filed a Response in Opposition to the Request for Judicial Notice (#23), to which Defendant filed a Reply (#25).

**I. Background**

Plaintiff Julie A. Prince alleges that she entered into a mortgage agreement on her home with Aegis Funding Corporation in November, 2005. (See #13 at 3.) After a period of time, Plaintiff

defaulted on the loan, which was serviced by another entity, America Servicing Company ("ASC"). (See id. at 4.) Plaintiff entered into a number of forbearance agreements with ASC, and "strictly follow[ed]" the payment schedule under the forbearance. (See id.)

It appears, however, that after a period of time, Plaintiff once again fell behind on her payments. On October 27, 2008, Plaintiff received a letter stating that her home would be sold on November 8, 2008. (See id.) In response, Plaintiff called ASC and agreed to wire $5,781.97—the amount required to bring her account current—by November 4, 2008, and also negotiated yet another forbearance agreement over the phone. (See id.) ASC promised to send a written copy of the forbearance agreement to Plaintiff, but when it arrived, it did not match the terms that Plaintiff had previously agreed to. (See id.) When alerted to this discrepancy, ASC promised to send another copy of the agreed-upon forbearance, but never did so. (See id. at 4–5.) Plaintiff nevertheless wired the correct amount of money on November 4, as required. (See id. at 4.)

In the meantime, Defendant U.S. Bancorp had purchased the loan. (See id. at 2.) Defendant eventually placed a "Notice to Evict" on Plaintiff's door, followed up by a "3 Day Notice to Quit." (See id. at 5.) Only then did Plaintiff realize that ASC had foreclosed on her home. (See id.) Plaintiff filed suit against Defendant in Nevada State Court, and Defendant filed a Notice of Removal (#1) with this Court on the grounds of diversity and federal question jurisdiction. (See #1 at 2–3.)

Plaintiff later filed an Amended Complaint alleging eleven separate causes of action: (1) Failure to adapt effective collection techniques to minimize defaults in mortgage payments under 24 C.F.R. §§ 203.600 and 203.606; (2) Failure to arrange a face-to-face meeting with Plaintiff under 24 C.F.R. § 203.604; (3) Failure to adapt collection and servicing policies according to Plaintiff's individual circumstances as required by 24 C.F.R. § 203.605; (4) Failure to evaluate loss mitigation techniques as required by 24 C.F.R. § 203.605; (5) Failure to comply with the Truth in Lending Act ("TILA") under 15 U.S.C. §§ 1635 and 1640; (6) Breach of contract; (7) Violations of the Real Estate Settlement Procedures Act ("RESPA") under 12 U.S.C. § 2605; (8) Violations of the Fair

Debt Collection Practices Act ("FDCPA") under 15 U.S.C. § 1692; (9) Unjust enrichment; (10) Deceptively concealing U.S. Bancorp's purchase of the mortgage loan; and (11) Violation of Nevada's mandatory notice provisions under NRS 107.080.  (See generally #13.)

Defendant, in turn, filed the present Motion to Dismiss the Amended Complaint, asking the Court to dismiss Plaintiff's Amended Complaint in its entirety.  (See generally #16.)  Defendant also asks the Court to take judicial notice of thirteen documents for purposes of the Motion to Dismiss. (See generally #17.)  In the alternative, Defendant asks the Court to use its discretion to treat the Motion to Dismiss as a Motion for Summary Judgment, taking into account the documents provided in its Request for Judicial Notice.  (See #16 at 1.)

**II. Standard for Motion to Dismiss**

In considering a Motion to Dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff has pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The Iqbal evaluation illustrates a two-prong analysis.  First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. See id. at 1949–51.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." Id. at 1951.  If the allegations state plausible claims for relief, such claims survive the motion to dismiss. See id. at 1950.

### III. Judicial Notice of Documents and Summary Judgment

Defendant asks the court to take judicial notice of thirteen documents, or in the alternative, to treat its Motion to Dismiss as a Motion for Summary Judgment. (See #16 at 1.) Under the Federal Rules of Evidence, a court may take judicial notice of documents that are either "generally known within the territorial jurisdiction of the trial court," or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Such documents generally include matters of public record. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). Nevertheless, the Court may not take notice of disputed facts, even if those facts appear in documents of public record. See id. at 690.

In addition, the Ninth Circuit also recognizes that a court "may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) (citation omitted).

Here, Plaintiff has disputed the accuracy of all thirteen of Defendant's documents as "self serving," (see #23 at 1) "not accurate," (see id. at 2) and "not fully referred in their present form." (See id. at 2.) Having reviewed Defendant's exhibits, the Court has determined that Defendant has asked the Court to take judicial notice not only of the existence of public records, but also of disputed facts in those records, which the Court may not do. See Lee, 250 F.3d at 690.

The Court also declines to convert Defendant's Motion to Dismiss into a Rule 56 Motion for Summary Judgment. "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003). Such an opportunity to respond must allow a "reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Here, Plaintiff has not yet had a chance to substantively respond to the documents Defendant

has presented to the Court. Therefore it is not appropriate at this time to convert Defendant's Motion to Dismiss into a Motion for Summary Judgment.[1]

**IV. Motion to Dismiss Analysis**

Defendant asks the Court to dismiss Plaintiff's claims on three basic grounds. First, Defendant argues that it cannot be liable on any of Plaintiff's claims, because those claims are only proper against ASC, and that as ASC's successor in interest, Defendant is not a proper party to this lawsuit. (See #16 at 8–9.) Second, Defendant asserts that Plaintiff's claims fail to meet the pleading standard set forth in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). (See id. at 10–11.) Finally, Defendant also argues that Plaintiff's claims are inapplicable to this case as a matter of law. (See id. at 11–17.)

A. Federal Housing Administration ("FHA") Claims

In Counts I–IV, Plaintiff asserts various claims under the National Housing Act and the applicable regulations under the Act. (See #13 at 5–8.) Plaintiff asserts that her "mortgage loan is an FHA-insured loan," and therefore that her case is governed by 24 C.F.R. §§ 203.600–203.606. (See #13 at 5–8.) However, Plaintiff makes no factual assertions to substantiate the legal conclusion that the mortgage in question in this case is insured by the FHA.

In order for a mortgage to be eligible for insurance by the FHA, certain requirements must be met. In particular, a loan must not exceed the maximum mortgage amount set forth under 24 C.F.R. § 203.18. For Clark County single-family residences during 2005, this amount was $269,000. See 2005 FHA Maximum Mortgage Limits, available at:

---

[1] The Court will be willing to consider Defendant's exhibits on a proper motion for summary judgment. The Court also notes that Plaintiff will need to counter Defendant's documents with substantive evidence if it wishes to continue disputing the reliability and persuasiveness of those documents, in order to demonstrate "genuine issues of material fact for trial," such that a "reasonable fact-finder could decide in the party's favor." In re Joye, 578 F.3d 1070, 1074 (9th Cir. 2009).

5

http://www.hud.gov/offices/adm/hudclips/letters/mortgagee/2004ml.cfm (last visited Aug. 17, 2010).[2]  Nevertheless, Plaintiff has made no factual allegation indicating that her loan complied with the requirements of 24 C.F.R. § 203.18 in 2005, or at any time thereafter.  (See #13 at 1–8.)  The duties Plaintiff alleges in Counts I–IV are therefore supported only by legal conclusions that this Court is obligated to disregard.  See Iqbal, 129 S. Ct. at 1950 (noting that "legal conclusions" are "not entitled to the assumption of truth").  Because there are no factual allegations that would plausibly indicate that Defendant was subject to the requirements of 24 C.F.R. §§ 203.600–203.606, Plaintiff has failed to state a claim under those regulations.[3]

### B. TILA

Plaintiff's Count V alleges that Defendant breached its obligations under the Truth in Lending Act ("TILA").  Congress passed TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."  15 U.S.C. § 1601(a).  To achieve that objective, TILA requires lenders to "disclose clearly and accurately all the material terms of a credit transaction."  Palmer v. Champion Mortgage, 465 F.3d 24, 27 (1st Cir. 2006).  For "closed-end" credit transactions (such as residential mortgage transactions), a lender must abide by 15 U.S.C. § 1638 and 12 C.F.R. §§ 226.17–226.18, which require lenders to disclose the creditor's identity, the amount financed, applicable finance charges, annual percentage rates, the total sale price, and other essential

---

[2] Defendant submitted what appears to be a copy of these maximum mortgage limits to the Court in "Exhibit M" to its Request for Judicial Notice.  (See #17, Ex. M.)  However, because the Plaintiff disputes the accuracy of the document submitted as Exhibit M, and because the Court does not find it necessary to take the time to compare Defendant's Exhibit M in its entirety to the FHA's publicly available documents, the Court takes judicial notice of the FHA's publicly available documents—which are not subject to any reasonable dispute—rather than taking judicial notice of Exhibit M.

[3] Plaintiff has also failed to dispute Defendant's argument that the loan in fact exceeded the maximum loan amount allowed by the FHA.  (Compare #16 at 16 with # 22 at 11–13.)  Although the Court may not—and does not—accept Defendant's factual allegation as true, Plaintiff's failure to respond reinforces the Court's finding that nothing in the Amended Complaint can be construed as a factual allegation sufficient to allege the applicability of §§ 203.600–203.606.

6

1  information. See 12 C.F.R. § 226.18. Such disclosures must be made "before consummation of the
2  transaction." 12 C.F.R. § 226.17(b).
3       In this case, Plaintiff asserts that Defendant breached its obligations under TILA by "failing
4  to disclose its intertwined relationship with Plaintiff." (See #13 at 9.) This allegation does not state
5  a claim under TILA. Nowhere in TILA does it prohibit subsequent purchasers of a loan from failing
6  to disclose an "intertwined relationship" with a borrower. See 15 U.S.C. § 1638; 12 C.F.R.
7  §§ 226.17–226.18. Nor has the Court been able to find any other facts set forth in the Amended
8  Complaint that would suffice to state a claim under TILA. To the contrary, Plaintiff concedes that
9  Defendant did not originate the loan, (see #13 at 2) so Defendant could not have been obligated to
10 make any disclosures to Plaintiff before the loan was finalized. See 12 C.F.R. § 226.17(b).
11 Furthermore, Plaintiff fails even to allege any defect with the initial disclosures under the original
12 loan. (See #13 at 8–9.) Plaintiff's Count V, therefore, fails to state a claim.
13     C. Breach of Contract
14      Plaintiff alleges that Defendant has breached two separate agreements: (1) the original loan
15 agreement; and (2) the oral forbearance agreement the Plaintiff negotiated over the phone with one of
16 ASC's representatives. (See #13 at 4, 9–10.) Because the mortgage agreement concerns the transfer
17 of an interest in land, it is subject to the statute of frauds. See NRS 111.205.1; Grappo v. Mauch,
18 887 P.2d 740, 742 (Nev. 1994) (noting that an oral conveyance of property falls within the statute of
19 frauds). The Court has not found any Nevada state cases addressing the issue of whether a
20 forbearance agreement relating to a residential mortgage also falls within the statute of frauds.
21 However, the majority of states–if not all of them–agree that such a forbearance agreement does fall
22 within the statute of frauds, such that it must be in writing to be enforceable. See, e.g., 14–81 Powell
23 on Real Property § 81.02[2][d] ("An oral modification of a written agreement to convey an interest in
24 property generally fails because it violates the statute of frauds, which requires some kind of
25 writing.") (collecting sources); 37 C.J.S. Statute of Frauds § 95 ("Modification of the terms of a
26 mortgage including the term specifying the interest rate, is governed by the statute of frauds, and

1  must be in writing to be enforceable.") (citing Fifth Third Bank v. Reddish, 2002 WL 31114911
2  (Ohio Ct. App. 2002)).  The Court believes the Nevada Supreme Court would follow the majority
3  rule on this issue.  As such, Plaintiff's claims for breach of contract based on the oral forbearance
4  agreement must be dismissed because Plaintiff has not alleged the existence of any writing that
5  would satisfy the statute of frauds.[4]  (See #13 at 4, 9–10.)

6       Defendant also asks the Court to dismiss Plaintiff's claims of breach arising from the original
7  mortgage agreement, arguing that Plaintiff has not alleged sufficient particularized facts required to
8  state a claim under the pleading standard set forth in Twombly.  (See #16 at 10–11.)  The Court,
9  however, does not find Defendant's arguments persuasive on this point.  Plaintiff has alleged the
10 existence of a written mortgage agreement, and the existence of particular interest rates applicable to
11 the mortgage.  (See #13 at 5.)  Plaintiff has also alleged that Defendant assessed fees and charges to
12 her account that were not agreed to by the parties (see id. at 9–10), and that she paid money that was
13 applied to those fees and charges. (See id. at 4.)  Such factual pleadings are entitled to the assumption
14 of truth for purposes of a motion to dismiss, see Iqbal, 129 S. Ct. at 1949, and are sufficient to state a
15 claim for breach of contract.  Cf. Sterling v. Goodman, 719 P.2d 1262, 1262–63 (Nev. 1986)
16 (holding that appellant was not liable for late fees on a "balloon payment" where such fees were not
17 agreed to by the parties); Jones v. Addesha Corp., 688 P.2d 298, 301 (Nev. 1984) (holding that a
18 contract could not be declared in default based on the failure to pay late fees, where the contract in
19 question did not provide for the payment of such late fees).[5]

---

[4] Plaintiff also has not pled any estoppel claims in her Amended Complaint.

[5] Defendant also makes the strange argument that Plaintiff's breach of contract claim is "largely preempted" by federal law.  (See #16 at 9.)  The Court has found nothing in the authorities Defendant cites to suggest that federal law preempts a breach of contract claim where a lender does not abide by the terms of a mortgage contract, and federal case law appears contrary to any such argument.  See, e.g., Jones v. ABN AMRO Mortgage Group, Inc., 606 F.3d 119, 123-25 (3d Cir. 2010) (holding that plaintiffs should have brought a breach of contract claim–rather than a tort claim–against defendants, alongside their RESPA claim, but dismissing the plaintiffs' RESPA claim because defendant was not a loan "servicer"); Colonial Savings, FA v. Gulino, 2010 WL 1996608, *4–8 (D. Ariz. 2010) (allowing plaintiff leave to amend a claim for breach of contract where TILA and RESPA claims survived a motion to dismiss).

8

### D. RESPA

Plaintiff's Count VII alleges violations of the Real Estate Settlement Procedures Act ("RESPA"), alleging that Defendant failed to respond to Plaintiff's "qualified written request" in violation of 12 U.S.C. § 2605. (See #13 at 10–11.) Defendant asks the Court to dismiss Count VII for two reasons. First, Defendant argues that it cannot be held liable as ASC's successor-in-interest as a matter of law. (See #16 at 8–9.) Second, it argues that Plaintiff has not brought her lawsuit within the one-year statute of limitations applicable to RESPA claims. (See id. at 9.)

However, Defendant cites no authority for the proposition that it cannot be held liable as a successor-in-interest on a RESPA claim. (See id. at 8–10.) Indeed, federal courts appear to assume that a successor in interest can be held liable for RESPA claims under certain circumstances. See, e.g., Wallace v. Midwest Fin. & Mortgage Serv., Inc., 2010 WL 2835753, *3 n. 4, *10–12 (E.D. Ky. 2010) (denying summary judgment on RESPA claims against a defendant where liability was based on successor-in-interest liability); Rivera v. BAC Home Loans Serv., L.P., 2010 WL 27557041 *1, *4 (N.D. Cal. 2010) (noting, where defendant's RESPA liability in plaintiff's complaint was based on its status as a successor in interest, that damages would have been limited to statutory damages, fees and costs, had plaintiff brought a timely claim); Kee v. Fifth Third Bank, 2009 WL 735048, *3–*11 (D. Utah 2009) (noting the defendant's status as a successor in interest to a loan servicer, and then addressing the substance of the plaintiff's RESPA claim). Defendant's argument is therefore unpersuasive.

It is also clear that Plaintiff has brought her claim within RESPA's statute of limitations. For violations under § 2605, which the Defendant has alleged here, (see #13 at 10–11) the applicable statute of limitations is three years, not one. See 12 U.S.C. § 2614. And even if the applicable statute of limitations had been one year, rather than three, Plaintiff filed her case in state court on May 19, 2009. (See #1 at 1.) Plaintiff alleges that she made a qualified written request to ASC in November, 2008, (see #13 at 10) so she has filed well-within one year of the "occurrence of the

violation." 12 U.S.C. § 2614.  As such, the Court finds no basis upon which to dismiss Plaintiff's Count VII.

### E. FDCPA

In Count VIII, (see #13 at 11–12) Plaintiff alleges violations of the Federal Debt Collection Practices Act ("FDCPA"), which regulates the activities of debt collectors. See 15 U.S.C. §§ 1692–1692p.  Defendant argues that the Court should dismiss Count VIII, because: (1) Defendant cannot be liable under the FDCPA as a "successor-servicer;" (2) Count VIII fails to allege sufficient facts to support a plausible claim under Twombly's pleading standard; and (3) Plaintiff's allegations of misrepresentation do not meet the particularity requirements of Fed. R. Civ. P. 9(b).  (See #16 at 14–15.)

The Court disagrees.  As with its arguments under RESPA, Defendant cites no authority for its argument that it cannot be held liable as a successor in interest under the FDCPA.  (See id. at 14–15.)  Here again, the case law appears contrary to Defendant's arguments on this point.  See, e.g., Chabot v. Washington Mut. Bank, 2010 WL 1416114, *1–5 (D. Mont. 2010) (presuming that defendants were successors in interest, and could be held liable based on the prior debt servicer's actions, but dismissing the case on grounds of res judicata), aff'd, 2010 WL 1376229 (D. Mont. 2010); Abdollahi v. Washington Mutual, FA, 2009 WL 1689656, *1–3 (noting that successor liability "is a question of fact, not a proper subject of a motion to dismiss," and dismissing plaintiff's FDCPA claims on other grounds).

Defendant's second argument also fails. Plaintiff has alleged that Defendant purchased the "loan" from ASC, (see #13 at 2) that ASC was the servicer of a loan, (see id. at 4) and that ASC misrepresented the amount of the debt by charging Plaintiff unauthorized fees, interest, and other charges.  (See id. at 12.)  These allegations suffice to state a claim under 15 U.S.C. § 1692e. See 15 U.S.C. § 1692(e)(2)(a) (indicating a violation of the FDCPA where there is a false representation of "the character, amount, or legal status of any debt"); Oei v. N Star Capital Acquisitions, LLC, 486 F.

Supp. 2d 1089, 1092–93, 1103 (C.D. Cal. 2006) (denying defendant's motion to dismiss where plaintiffs alleged that defendant had tried to collect a debt plaintiffs did not owe).

Finally, it is well-settled that § 1692e is a "strict liability" statute, such that allegations of intentional misrepresentation are not necessary. See Clark v. Capital Credit & Collection Servs., 460 F.3d 1162, 1175–76 (9th Cir. 2006) (agreeing with other circuits that a violation of § 1692e does not require a showing of a knowingly or intentionally false misrepresentation). Plaintiff is not required to meet the strictures of Rule 9 in her Amended Complaint, and has therefore stated a claim under Count VIII.[6]

### F. Unjust Enrichment

Plaintiff's Count IX alleges that "ASC has been unjustly enriched and cannot in good conscience keep that portion of the monthly payments it collects from Plaintiff which is attributable to the artificial, inflated component of Plaintiff's loan contract," and that successor-in-interest Defendant "should return this money to Plaintiff." (#13 at 12.) Defendant argues that this count should be dismissed for failure to allege sufficient facts to plausibly support a claim under Twombly, (see #16 at 10) and that the claim is "factually impossible" because the Amended Complaint does not allege that Defendant was ever unjustly enriched at Plaintiff's expense. (See id. at 15.)

The Court agrees. Unjust enrichment occurs where "a person has and retains a benefit which in equity and good conscience belongs to another." Mainor v. Nault, 101 P.3d 308, 317 (Nev. 2004) (citation omitted). This standard is met where there is "a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit." Topaz Mut. Co. v. Florence Marsh, 839 P.2d 606, 613 (Nev. 1992)

---

[6] The Court does note, however, that Plaintiff may not pursue her FDCPA claim on the basis of her allegations that ASC gave her notice of its intention to foreclose on the property. (See #13 at 4, 12.) Courts have consistently held that foreclosure is not an action intended to "collect a debt" under the FDCPA, and therefore cannot be a basis for violations of the FDCPA. See, e.g., Quintero Family Trust v. Onewest Bank, F.S.B., 2010 WL 2618729, *4 (S.D. Cal. 2010); Diessner v. Mortgage Elec. Registration Sys., 618 F. Supp. 2d 1184, 1188–89 (D. Ariz. 2009); Izenberg v. ETS Serv., LLC, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008); Hulse v. Ocwen Fed. Bank, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002).

11

(citation omitted). Plaintiff, however, has only alleged that her payments were given to ASC, not Defendant. (See #13 at 12.) She has alleged no facts indicating that ASC transferred the benefits of any inflated payments to Defendant, no facts indicating that she herself paid any money directly to Defendant, and no facts indicating that Defendant was aware of any such benefit conferred on ASC. (See # 13 at 1–12.) Plaintiff has therefore failed to state a claim under Count IX.

G. Deceptive Concealment

In Count X, Plaintiff alleges that "Predecessor-in-interest ASC had intentionally or recklessly concealed from mortgagors whose mortgages were acquired by U.S. Bancorp that it owns the mortgage" and that "U.S. Bancorp mortgagors falsely concealed from [the mortgagors] that U.S. Bancorp owned their mortgages." (#13 at 13.) To the extent that this allegation applies to Plaintiff's TILA and RESPA claims, the Court has already addressed those questions. Beyond that, the Court is aware of no "deceptive concealment" claim recognized under Nevada or Federal law. The Court "declines to create a new cause of action in the absence of any established statutory or other right." Larson v. Homecomings Fin., LLC, 680 F. Supp. 2d 1230, 1234 (D. Nev. 2009). Plaintiff has therefore failed to state a claim under Count X.

H. Nevada Mandatory Notice Provisions

Finally, Plaintiff alleges that Defendant failed to comply with Nevada's mandatory notice provisions under NRS 107.080.2(2). (See #13 at 13–14.) NRS 107.080 requires a trustee to give a debtor thirty-five days' notice before foreclosing on a security interest in property. The thirty-five days begin to run on "the first day following the day upon which the notice of default and election to sell is recorded in the office of the county recorder . . . and a copy of the notice of default and election to sell is mailed . . . to the grantor." NRS 107.080.3. Defendant argues that Count XI should be dismissed because Plaintiff has not alleged Defendant's failure to mail the required notice of default and election to sell. (See #16 at 11.) Defendant, however, is incorrect. Plaintiff has alleged that she "was informed by a representative of ASC and then by U.S. Bancorp that no notice was sent out, and that no notice needed to be sent out." (#13 at 2.) While inartfully pled, the Court

understands this factual allegation to refer to Plaintiff's claim under Count XI. The most plausible understanding of that factual allegation is that Defendant never sent the required notice to Plaintiff as required by NRS 107.080. The Court therefore finds that Plaintiff has stated facts sufficient to plausibly state a claim under Count XI.[7]

**V. Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that Defendant U.S. Bancorp's Motion to Dismiss (#16) is **GRANTED** with respect to **COUNTS I–IV, IX, and X**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (#16) is **DENIED** with respect to **COUNTS VI–VIII and XI**.

DATED this 25th day of August 2010.

_____
Kent J. Dawson
United States District Judge

---

[7] Defendant also argues that the public record "demonstrates unequivocally that the required notice was recorded." (#16 at 11.) The Court understands that it is allowed to take judicial notice of the fact that the document was recorded, since the filing itself is a public record. (See #17, Ex. E.) However, Defendant is also required by NRS 107.080.3 to mail the notice to Plaintiff, the absence of which is sufficiently pled in Plaintiff's Amended Complaint to survive a motion to dismiss.